County Court, Tompkins County, September, 1903. Reported. 41 Misc. 425.

Matter of the Petition of ELIZA IRELAND and Another, for an Order Revoking and Cancelling Liquor Tax Certificate No. 19,572, Issued to BRIDGET MESSAR.

**Liquor Tax Law—Abandonment of the place of traffic—Consents.**

A building is not exempt from consents to the liquor traffic as having been actually occupied as a hotel on March 23, 1896, and continuously thereafter where it appears from subsequent applications for liquor tax certificates, to which the owner of the building consented in writing, that her tenant stated, in 1896 and in 1897, that he intended to traffic in liquors in connection with a "restaurant" and in a later year in connection with "lunch business" and where there is proof that in all these years he closed the place on Sunday and did not keep it open as a hotel.

Consents of owners of buildings used mainly for business purposes cannot be counted in determining whether sufficient consents have been procured.

APPLICATION for an order revoking and cancelling a liquor tax certificate.

Tompkins, Cobb & Cobb, for petitioner.

G. S. Tarbell and D. M. Dean, for defendant.

ALMY, J. On the 19th day of June, 1902, the defendant being the owner of premises known as "The Messar House," No. 508 West State street, in the city of Ithaca, N. Y., made application for a tax certificate under subdivision 1 of section 11 of the Liquor Law and in her application alleged that the Messar House was used as a hotel on the 23d day of March, 1896, and had been continuously used as such since 1890.

These statements, if true, would sustain the certificate I am asked to revoke. The petitioner produces the application for a license for this place made by defendant's tenant in April, 1896,

in which he states that in connection with the business of traffick·
ing in liquors he intends to conduct a " restaurant only." This
application the defendant signed her consent to as owner. Again
in 1897, defendant's tenant applied for a license and stated again
in his application that he intended to traffic in liquors in con·
nection with " a restaurant " and the defendant signed her con·
sent to this application. In a later application the same tenant
in answer to the question what other business was to be carried
on on the premises beside the sale of liquor, stated " Lunch Busi-  .
ness." To this application the defendant signed her consent, and
in all of the years I have mentioned this tenant closed the place
on Sundays and did not keep it open as a hotel. Thus it seems to
be conclusively shown that the defendant intended to abandon
the keeping of a hotel at this place even if one was being kept
there on March 23, 1896, as to which there is much evidence and
contention, but in view of what I have stated the question is
immaterial. Hence, in order to retain the certificate it must be
shown that the owners of two-thirds of the buildings used exclu
sively for dwellings within two hundred feet of the nearest
entrance of the Messar House had signed a consent that the ·
traffic of liquors be carried on on the premises in question.

The defendant accompanied his application with the duly
acknowledged consents of

Mary Sandborn for Nos. 113 and 115 North Corn street. One
of these numbers, 115, is outside the two hundred foot limit.

George Stephens for 506 West State, 10 North Corn and 505
West Seneca. No. 506 is used mainly for a grocery store and
cannot be counted.

John Wolahan for 519 West State street.

W. W. Boyer for 502, 504, 108 1-2 West State, 104 and 106 North
Corn street.

All these buildings are used principally for business, the two
first are over a barber shop, the third and fourth over a shoe
shop, and the last one, 106, occupied by Leonard, is the only one
that can be counted and that I do although it is in the same build-
ing with the shoe shop, as there is some evidence that it is
entirely separated by appropriate walls.

George Stephens as agent for 505 West Seneca.

Louis Coryell for 517 West State, but before the application
for the certificate was made Louis Coryell had died. His death
revoked his consent and as to whether or not he was the owner

of the property, or who owned it at the time the application was made, there is no proof other than that of occupants. The consent of the widow and one of the children, a minor, of said Louis Coryell, I cannot count for the reason at least one of the owners of the property did not sign, if it be conceded that Louis Coryell owned the property and died intestate. The number of valid consents which the defendant obtained was, therefore, five. There were eleven buildings used exclusively for dwellings within the two hundred foot limit and since two-thirds of this number were not obtained and defendant was not entitled to the certificate in question it must be revoked.

Ordered accordingly.